## Lathrop S. Ellis v. Charles Secor.

*Gifts causa mortis : Public policy : Voluntary and intelligent action : Fraud : Mistake.* Gifts *causa mortis* are not to be held void as contrary to public policy where the facts are clearly shown, nor can it properly be said that the law treats them with disfavor, except in the sense that such transactions are scrutinized carefully to ascertain whether freely and intelligently done, because there is much room for fraud and mistakes.

*Gifts causa mortis : Delivery : Written assignments.* The requirement of delivery is no more essential to gifts *causa mortis* than to all gifts; and though tradition or some equivalent seems to have been necessary at common law to pass chattels by gift, yet it was always competent to transfer them by writing.

*Gifts causa mortis : Choses in action : Delivery : Equitable assignments.* The reluctance of the early courts to sustain gifts *causa mortis* of *choses in action* arose from the fact that no legal transfer could be made of them at all, because they only represented rights, but were not intrinsically valuable; and since the equitable doctrine has prevailed that they can be assigned by delivery they are placed with all other chattels as subject to gift, and the same rules have been enforced.

31 MICH.—24.

ELLIS *v.* SECOR.

*Assignments without consideration : Voluntary gifts and settlements : Trusts :*
*Choses in action : Delivery.*  Assignments by writing without consideration
are neither more nor less than a branch of voluntary gifts and settlements;
and in the case of *choses in action* they fall generally under the doctrine of trusts
and equitable assignments; and the only question of doubt as to the require-
ment of delivery relates to delivery, not of the securities, but of the *memoran-*
*dum of transfer.*

*Gifts causa mortis : Securities : Written assignments : Transfer of title : Intent :*
*Delivery : Declaration of trust.*  A woman who had lived alone was found
dead in her house and without attendants on December 26, 1878, and is sup-
posed to have died about the 19th ; she left no will, but there was found written
and subscribed by her on a slate by her bedside, these words : "I wish Dr. L. S.
Ellis to take possession of all, both personal, real and mixed.  I am so sick I
believe I shall die.  Look in valise ;" a valise was found in her room containing
her securities in an old envelope with her name upon it, but not in her writing,
and unsealed ; in the same valise was also an envelope directed by herself to
Dr. L. S. Ellis, and containing the following memorandum, written and sub-
scribed by her, addressed to said Ellis, and bearing date December 19th : "I
wish you to take possession of all my effects, to do with them as you see fit.
Dunlap has the Higgins and Parr papers; the rest you will find in my valise.
I have paid Dunlap $64 (thirty-four dollars) in advance.  Push these according
to your own judgment.  All I have said about them is true.  If James H.
Wing should ever call on you, give him $1,000, or whatever your judgment
dictates, but to no one else, for I have given the others all I ever intend to."
Ellis having got possession of the securities, the administrator on the estate of
said deceased brought trover, and on the trial evidence received by stipulation
showed a long continued design to give the property to Ellis (to whom deceased
was under obligations for services and kindnesses) to the exclusion of her
kindred :

*Held,* that the paper here in question, if actually delivered, would have been
a sufficient assignment on its face to pass title, if so intended ; that it is un-
conditional and unequivocal ; that the deceased did all that was in her power
under the circumstances to create a gift *causa mortis,* and fully intended it ;
and that her written declaration must prevail as a valid appointment to the
uses indicated as fully as if there had been a manual delivery of the securities.

*Voluntary deeds of gift or settlement : Delivery : Executed transfers : Executory*
*agreement.*  The retained possession by a grantor of a voluntary deed of gift
or settlement is not inconsistent with its enforcement, if intended to be effectual
and if capable of transferring title by its terms; but where, if delivered, it
would not have been operative as an assignment, it will fail because amount-
ing to no more than an executory agreement.

*Assignments of choses in action : Equitable trusts : Declaration of trust.*  It is
through the equitable doctrine of trusts that assignees of *choses in action* are
protected, and it is as declarations of trust that such assignments are really main-
tained under the authorities; and any thing which creates a trust in favor of
the donee is sufficient if the trust be lawful; a declaration of trust is not con-
fined to any express form of words, but may be indicated by the character of
the instrument.

*Heard January 14.  Decided January 19.*

Error to Manistee Circuit.

*Ramsdell & Benedict,* for plaintiff in error.

*Bullis & Cutcheon,* for defendant in error.

CAMPBELL, J.

Secor, as administrator of Rachael Hill deceased, recovered judgment against Ellis in trover for the conversion of certain securities, which the latter claimed as having become his property by a gift in the nature of a gift *causa mortis.*

There is no dispute about the facts. A part of the securities consisted of notes against Ellis, and the remainder of notes of other persons in part secured by mortgage. Rachael Hill died intestate, as is supposed, on the 19th day of December, 1873, and either then or between that day and the 26th, when she was found dead in her house. At that time there was found written by her on a slate by her bedside: " I wish Dr. L. S. Ellis to take possession of all, both personal, real and mixed. *Rachael Hill.* I am so sick, I believe I shall die ; look in valise."

A valise was found in her room containing the securities in question, in an old envelope with her name upon it but not in her writing, and unsealed. In the same valise was an envelope directed by herself to Dr. L. S. Ellis, and containing the following memorandum written by her: " I wish you to take possession of all my effects, to do with them as you see fit. Dunlap has the Higgins and Parr papers, the rest you will find in my valise. I have paid Dunlap $34 (thirty-four dollars) in advance. Push these according to your own judgment. All I have said about them is true. If James H. Wing should ever call on you, give him $1,000, or whatever your judgment dictates, but to no one else, for I have given the others all I ever intend to.

                                        RACHAEL HILL.

" MANISTEE, Dec. 19th, 1863.

" To DR. L. S. ELLIS."

The date is agreed to be a clerical error for 1873. Dr. Ellis obtained possession after her death. There was evidence received by stipulation showing a long-continued design to give the property to Dr. Ellis ( to whom the deceased was under obligations for services and kindnesses).

to the exclusion of her kindred.    She was living alone and died alone.

There is no room for any doubt that the deceased intended to give, and supposed she had given, this property to Dr. Ellis.    It is equally plain that she did not intend to make a will.    The only question is, whether, after she had done all in her power to accomplish this end, it has failed for want of any legal formality.    And the only formality supposed to be wanting is delivery, actual or constructive.

It was urged strongly on the argument, that the law treats such transactions with disfavor, and that they are contrary to public policy, and not to be sustained where it can be avoided.    There is no doubt some such language in the books.    But it is only used in the sense that such acts are scrutinized carefully to ascertain whether freely and intelligently done.    There is no middle class between lawful and unlawful acts.    And it is the duty of courts to enforce all lawful rights, so as to carry out the intention of the parties.    That intention should always be observed if lawfully expressed; and it is only incumbent on legal tribunals to be very careful to ascertain the facts.    There is much room for frauds and mistakes in cases of this kind, and therefore care should be used to sift the evidence.    But where there is no doubt about the facts, it would be a legal wrong and gross injustice to refuse to act upon them fairly and without hesitation.

The authorities which were cited on the argument, and others which are scattered through the reports, generally declare that delivery of the chattels or securities is necessary to establish a gift *causa mortis.*

This, however, is not because the gift is made *causa mortis*, but because the rule is supposed to apply to all gifts.    Tradition or some equivalent seems to have been necessary at common law, to pass chattels by gift.    But it has always been competent to transfer them by writing, which is less ambiguous than parol delivery, and there can

be no doubt of that at the present day,—delivery under writings being chiefly necessary to avoid questions with third persons, but not between the parties. And the un-willingness of the early courts to sustain gifts *causa mortis* of *choses in action*, arose from the fact that no legal transfer could be made of them at all, because they only represented rights but were not themselves intrinsically valuable. Since the equitable doctrine has prevailed that they can be assigned by delivery, they are placed with all other chattels, as subject to gift; and the same rules have been enforced. But no doubt ever existed as to their being transferable by writing so as to vest the beneficial title in the assignee, and the questions have been in all cases, not whether they *could* be, but whether they *had* been transferred in that way.

The confusion, if any, which is found in some of the text-books, is partly due to an attempt to draw unreal distinctions between these and other strictly analogous transactions. They are neither more nor less than a branch of voluntary gifts and settlements; and in the case of *choses in action*, fall generally under the doctrine of trusts and equitable assignments. The cases are abundant where such transactions have been maintained, where the technical phrase *donatio causa mortis* is not referred to.

If there could be any doubt on the subject, it would seem to be, not whether the securities must be delivered, but whether the memorandum of transfer must be delivered. The paper in question here, if actually delivered, would have been a sufficient assignment on its face to pass title, if so intended.

It has been held that the retained possession by a grantor of a voluntary deed of gift or settlement is not inconsistent with its enforcement, if intended to be effectual, and if capable of transferring title by its terms. But where, if delivered, it would not have been operative as an assignment, it will fail, because amounting to no more than an executory agreement. This is the reason for some conflict

in the authorities, arising only from the doubt whether in certain cases it was executed or executory. This is very clearly explained by some recent decisions in the English courts.

In *Fortescue v. Barnett, 3 Mylne & Keen, 36,* the question was made whether a written assignment of a bond was valid without manual delivery of the bond itself, and the objection made was, that it passed no title. The court there drew the distinction between those cases where any thing remains to be done by the grantor to complete title, and those where nothing more is necessary; and illustrated it by the case of stocks, where, according to the English law, no title, either legal or equitable, could pass till a formal transfer. But an equitable title to a bond did pass by assignment, and the assignee could enforce the bond in equity. For purposes of assignment an equitable title is held to be as valid as a legal one, and when the owner assigns it, no further act on his part is necessary to invest the purchaser with a present title, within this rule of law.

It is through the equitable docrine of trusts that assignees of *choses in action* are protected; and any thing which creates a trust in favor of the donee is sufficient, if the trust itself is lawful. And such assignments are maintained really, as has been expressly declared, as declarations of trust. Reference to some decisions will show this.

In *Jones v. Lock, L. R., 1 Ch. Ap., 25,* Lord Cranworth was called upon to determine whether a gift had been completed, where a father put a check for nine hundred pounds for a moment into the hands of his son of nine months old, saying, " I give this to baby for himself," and then took it away, and it was found among his assets after his death. He held that in the case before the court there had been no completed gift, but only because on all the facts before him he thought the father had no such intention; and he expressly recognized the doctrine that it would have been a valid declaration of trust if so intended. And he declares that all the authorities turn upon that question, whether

what has been said was a declaration of trust or an imperfect gift.

In *Morgan v. Malleson, 10 Eq.* (*L. R.*), *475,* a written gift of an India bond for one thousand pounds was held a valid declaration of trust without delivery of the bond.

In *Pye ex parte and Dubost ex parte, 18 Ves. 140,* a gentleman in England directed an agent in France to purchase an annuity in the name of a lady, and the agent purchased in the gentleman's own name, supposing there might be difficulty in her controlling it as a married woman. The gentleman afterwards sent a power of attorney to transfer it to her, but died before it was done. *Lord Eldon* declared the lady to be entitled to it, and declined to enter into the question what the French law might be. He said, "It is not necessary to pursue that, as upon the documents before me it does appear that though in one sense this may be represented as the testator's personal estate, yet he has committed to writing what seems to me a sufficient declaration that he held this part of the estate in trust for the annuitant."

In *Richardson v. Richardson, L. R., 3 Eq., 686,* where this subject is very fully discussed, the decision of *Lord Eldon* was quoted, and the inquiry made as to what his lordship had regarded as constituting the declaration. Vice Chancellor *Wood* (soon thereafter made Chancellor as Lord *Hatherly*), thus explains it: "Now, the testator had done nothing more than execute the power of attorney. It is true, he had written a letter directing the stock to be purchased in the lady's name; but that was not done, it was purchased in his name. The decision, therefore, could only be rested upon this, that this was not an agreement to assign, not an agreement to become a trustee at some future period, but an actual constitution by the testator of himself as trustee."—*p. 694.* This case is very instructive upon the distinction before referred to between transfers or gifts which are imperfect and executory and those which are sufficient to operate upon the title. And referring to

a decision of the Lords Justices in *Kekewick v. Manning, 1 D., M. & G., 176* (which is also an instructive case), he quotes from it their expression: "A declaration of trust is not confined to any express form of words, but may be indicated by the character of the instrument."—*p. 693.*

In *Penfold v. Mould, L. R., 4 Eq., 562,* the same learned Vice Chancellor reviewed the doctrine very clearly, and declared that any undoubted expression of intention to pass the property will make the grantor a trustee, although some formalities may be wanting. He declares the case of *Meek v. Kettlewell, 1 Hare, 464,* which held a voluntary assignment of a *chose in action* an imperfect gift, to have been overthrown. He says: "That decision has been in effect overruled, and it is now held that any instrument may be a sufficient declaration of trust, no form being necessary; the only material question being, 'Did the grantor, or did he not, mean at once to pass the property.'"—*p. 565.*

In *Grangiac v. Arden, 10 J. R., 292,* the efficacy of a very informal act as a gift *inter vivos* was carried very far. A father having bought a lottery ticket, wrote on it the name of a young child not present, and put it in his desk, saying it was for her. It drew a prize, and he put the money into business, saying it was for her benefit. The daughter grew up and married, and sued her father and recovered. Her counsel claimed the father was a trustee, and that no actual delivery to him as such was possible or was necessary. The court, in a brief decision, say, that delivery was necessary, but might be inferred. The counsel were more correct than the court in their grounds of recovery, for there is no authority for holding a declaration of trust must be delivered to the beneficiary, and it is not edifying to hold that a delivery is material, and yet fairly to be inferred, not only without, but against proof.

The case of *Johnson v. Smith, 1 Ves. Sen., 314,* is very analogous to the present case, because the donor reserved a life control. A voluntary deed of gift of chattel interests and securities was retained by the donor in his own posses-

sion, and was not intended to operate a beneficial interest in the grantee until the death of the grantor. The court held it reasonable for him to retain control of his personalty during life, and maintained the deed as valid, and put the grantee to her election between that and a bond given to her by the grantor.

The following cases, although not all in point directly, illustrate some of the points involved.—*Souverbye v. Arden, 1 J. C. R., 240; Clavering v. Clavering, 2 Vernon, 473, aff. 1 Bro. P. C., 122; Boughton v. Boughton, 1 Atk., 625; Uniacke v. Giles, 2 Moll., 257; Exton v. Scott, 6 Sim., 31; Peck v. Parrot, 1 Ves. Sen., 236; Brenckerhoof v. Lawrence, 2 Sanf. Ch., 442; Wekett v. Raby, 3 Bro. P. C., 16; Aston v. Pye, 5 Ves., 351.*

There can be no doubt concerning the meaning of the memorandum left by the deceased. It is unconditional and unequivocal. We think it clear that Rachael Hill did all that she could to create a gift *causa mortis,* and fully intended it, and that her written declaration should prevail as a valid appointment to the uses indicated, as fully as if there had been a manual delivery of the securities.

The judgment below must be reversed, and judgment rendered in this court in favor of Ellis on the finding; the estate to bear the costs.

The other Justices concurred.