CHARLES M. LOVE v. THEODORE FRANCIS, AS ADMINISTRA- TOR OF THE ESTATE OF CYRUS K. FRANCIS, DECEASED, HARRIET BELL, ELIZABETH BARRETT, THEO- DORE FRANCIS, BYRON H. FOX, AND ESTELLA BROWN.

*Chancery appeal—Gift inter vivos—Delivery and acceptance of— Evidence—Decree—Res judicata.*

1. Where proofs are taken in *open court*, either party has *forty* days from the *settlement* of the case in which to appeal, provided forty

[1]See *Vos v. Dykema*, 26 Mich. 401; *Bennett v. Robinson*, 27 Id. 31; *Foss v. Van Lriele*, 47 Id. 204; *Riggs v. Sterling*, 51 Id. 159.

or more days have elapsed since the entry of the decree.   *Gale v. Gould*, 40 Mich. 62.

2. Where an administrator was made a party to a bill in chancery in his *representative* character and as one of the *heirs at law* of the deceased, and the decree disposed of his rights as *administrator* and established certain rights in him to the fund as such *heir*, from which he gave due notice of appeal, but filed his *individual* bond, which did not purport to cover his representative rights,—

    *Held*, that no appeal was ever perfected by him as *administrator.*

    *Held*, further, that had he filed the bond in *both* capacities it would have been sufficient.   *Warner v. Whittaker*, 5 Mich. 241.

3. A *father*, desiring to distribute his property during his life-time, reserving its *use* to himself, conveyed forty-nine acres of land to a son, taking back a note for the purchase price, payable to *his* heirs four years after *his* decease, with interest payable to *himself*, but to cease at *his* death; said note being secured by a mortgage on the land with like conditions as the note as to payment.

    *Held*, that the transaction constituted a valid gift *inter vivos* to the heirs as to the *principal sum;* that the interest of the donor made it necessary, under the circumstances, for him to retain the *actual* possession of the note for his *own* security; and that, by placing the mortgage *on record*, he had done all he could to make a *delivery* consistent with his *own* rights in the paper, and became a *trustee* for the heirs in the *custody* of the instrument by implication of law, and they *alone* could enforce payment of the *principal.*

4. To constitute a valid gift *inter vivos* there must be a delivery, *actual* or *constructive;* but it is not necessary that it be *directly* to the donee, but *such* delivery may be to some person for him, as to a trustee; and in *all* cases the *disposition* made must be such as will place the *jus disponendi* beyond the *donor's* power to recall.

5. It requires less *positive* and *unequivocal* testimony to establish the *delivery* of a gift from a father to his children than between persons not related, and where there is no suggestion of *fraud* or *undue influence* very *slight* evidence will suffice.

6. A note payable to "the *heirs* of Cyrus K. Francis" is payable to his. *legal* heirs in the *popular* sense of that term, which refers to a class of persons *then* in *being*, who bore *that* relation to him which would constitute them his *legal* heirs at his death.   Under our statute, such *legal* heirs are the children *living* at the time of the ancestor's *death*, and the *issue* of any *deceased* child.

7. The *acceptance* of a gift need not be made *immediately*, but is sufficient if made before *revocation* by death or otherwise.

8. A father sold a farm, and took a mortgage note for the purchase price, payable to his *legal* heirs, with *interest* reserved to himself during his life-time, and to cease at his death. One of his sons assigned his interest in the note and mortgage to a third party some years before his father's death.

   *Held*, that this was evidence of his acceptance of the gift, which, being made to him *jointly* with the other heirs, and being *beneficial*, inured to *their* benefit.

9. A father conveyed a parcel of land to a son, taking back a mortgage note for the purchase price, payable to his *legal* heirs, with *interest* payable to himself during his life-time. He commenced a foreclosure suit for accrued *interest*, making the son *sole* defendant, and secured a decree fixing the amount of *interest* due on the mortgage, and the amount of *principal* thereafter to become due, and ordering a sale of the *entire* premises in default of payment thereof by a fixed date; and, in case of sale, directing the *payment* of the sum so *found due*, and the payment *into court* of the *balance* of the purchase price. Payment was made of the amount due on the decree, and no sale was ever made thereunder.

   *Held*, that the object of the bill was to foreclose for non-payment of *interest*, and that the father could not foreclose for the *principal*, which could never become due in his life-time; that the proper parties to litigate as to the *ownership* of this *principal* sum were not before the court, and that their co-heir could not, by his *silence* or *inaction*, admit away their rights; and that the decree was not *res judicata* in a suit brought in the interest of such heirs to settle the right of the father's estate and their own to the *principal* of the mortgage.

Appeal from Kalamazoo. (Mills, J.) Argued July 15, 1886. Decided October 14, 1886.

Bill to redeem from mortgage, and for other relief. Decree for complainant affirmed. The facts are stated in the opinion.

*Dallas Boudeman,* for complainant.

*Edwards & Stewart,* for defendants, except Byron H. Fox and Estella Brown.

*P. C. Beard* and *Geo. P. Hopkins,* for defendants Fox and Brown.

CHAMPLIN, J. On April 28, 1866, Cyrus K. Francis was the owner in fee of 49 acres of land situated in the township of Texas, Kalamazoo county, Michigan. He had four children living at that time, namely: Theodore and Charlemagne Francis, Harriet Bell, and Elizabeth Barrett. Another of his daughters had died, leaving two children who were then living, named Byron H. Fox and Estella Brown. These persons were his heirs at law at the time of his death, which occurred on the eighteenth day of March, 1880.

On the said twenty-eighth day of April, 1866, Cyrus K. Francis conveyed by deed to his son Charlemagne Francis the 49 acres of land. The consideration expressed in the deed, although nothing was paid down, was $2,000. Upon the receipt of this conveyance, Charlemagne Francis made and delivered to his father, Cyrus K., his promissory note as follows:

"KALAMAZOO, April 28, 1866.

"For value received, I promise to pay to the legal heirs of Cyrus K. Francis, four years after his death, sixteen hundred dollars, with seven per cent. interest per annum, and payable annually to the said Cyrus K. Francis during his natural life-time; at his death the interest to cease. The payment of this note is secured by mortgage on real estate, of even date herewith, and stamped with revenue stamp of two dollars.

"CHARLEMAGNE FRANCIS."

To secure the payment of this note, on the same day, Charlemagne made, executed, and delivered to Cyrus K. Francis a mortgage covering the same lands conveyed to him by his father, in which it is stated that the mortgage was made to secure a part of the purchase money for the premises therein described. The mortgage contains the usual power of sale in case of default. Cyrus K. Francis caused this mortgage to be recorded on the twenty-eighth day of April, 1866, but retained possession of the note until his death.

Charlemagne Francis went into possession of the property

conveyed to him, and thereafter paid to Cyrus K. Francis the annual interest as it matured upon the note for the years 1867, 1868, and 1869. For the three years following, Charlemagne neglected to pay the interest. In July, 1872, there was due for unpaid interest $336, and Cyrus K. Francis commenced a suit in the circuit court for the county of Kalamazoo, in chancery, to foreclose the mortgage. In this suit Cyrus K. Francis was the sole complainant, and Charlemagne was the sole defendant. Personal service of subpœna to appear and answer was had, and a decree for a foreclosure by sale was duly entered for the interest due. The bill of complaint filed in the cause, in addition to the clauses usually contained in such bills filed to obtain a foreclosure where the whole indebtedness is not due, contained the following statements:

"And your orator further shows that he was the owner of said real estate above described, and, being aged and infirm, he desired to dispose of his said real estate in such a manner as might secure to himself a comfortable support, and at the same time he had it in view to declare and direct the disposition of the avails of his said real estate after his death; and accordingly, to effectuate such purpose, he sold and conveyed to said Charlemagne Francis, his son, his said real estate above described, and received from said Charlemagne Francis the note and mortgage hereinbefore mentioned and described; and said note and mortgage were given for the said purchase money of the said described real estate, your orator stipulating for the payment of the interest, as mentioned in said note and mortgage, during his life, as his means of support.

"And he further shows that he is the absolute owner of the entire mortgage interest mentioned and described in said mortgage, no consideration having passed to him, from any persons whomsoever, on account whereof or whereby he provided for the payment of said purchase money to his heirs."

Proof was introduced in support of these statements in the bill. Cyrus K. Francis testified:

"The amount of principal and interest unpaid on this note and mortgage, marked 'Exhibit A,' is mine; it belongs to

me. I have never delivered to any person the note and
mortgage. I own the same myself, and provided for its
payment in this manner with the view to make, at my own
time, distribution of my own property.

"Am acquainted with these mortgaged premises; I went
onto them in 1855, and stayed the ᵇ till within a few years
past, and until about four years ago.

"At the date of this mortgage, marked 'Exhibit A,' I con-
veyed these mortgaged premises to the defendant, Charle-
magne Francis, and the mortgage in question I received
from the defendant to secure the payment of the whole pur-
chase money upon that sale. I received no consideration for
the provision making the payment of the principal of $1,600
payable to my heirs."

The decree was entered March 6, 1873, and authorized a
sale of the mortgaged premises if the amount reported due
was not paid by July 15, 1873.

On June 14, 1873, Charlemagne Francis sold and assigned
his interest, which he then had as heir at law of Cyrus K.
Francis, to the sum of $1,600, payable to the heirs of Cyrus
K. Francis and secured by said mortgage, to the complain-
ant, and on the sixteenth of June, 1873, said Charlemagne
sold and conveyed the mortgaged premises to the complain-
ant. This conveyance was subject to the mortgage above
referred to, and was conditioned that complainant should
pay the mortgage as so much purchase money for the prem-
ises. Complainant has paid the amount found due by the
decree, and has paid all interest on the note up to the time
of the death of Cyrus K. Francis. Upon the death of
Cyrus, Theodore Francis was appointed administrator of his
estate.

Commissioners on claims were appointed, and a claim was
presented and allowed in favor of Theodore Francis for
$1,745.72, and no appeal was taken from such allowance.

In February, 1885, the complainant filed his bill of com-
plaint, setting forth substantially most of the facts above
narrated, and alleging that the defendant Theodore claimed
that the moneys secured by the note and mortgage belonged

to the estate of Cyrus K. Francis, and should be paid to him as the administrator thereof; that the other defendants claimed that said moneys belonged to the heirs of the said Cyrus, and should be paid to them without passing through the hands of the administrator; asserts that he is and has always been willing to pay said heirs or administrator, or both, said $1,600, except the share thereof assigned to himself by Charlemagne; prays that defendants may interplead, and settle between themselves to whom the money belongs, and asks leave to redeem the premises from said mortgage, and to pay the redemption money into court, and that the mortgage may be discharged.

Defendants Theodore Francis, Harriet Bell, and Elizabeth Barrett answer, admitting the facts alleged in the bill, except that they say that the making of said conveyance by Cyrus K. Francis to Charlemagne, and taking the note and mortgage from him in the manner provided, was in pursuance of the purpose then entertained by Cyrus K. Francis in his life-time to distribute the avails of this real estate after his death.

They also set up the foreclosure proceedings, and insist that the decree in that suit established the fact that said Cyrus K. Francis was the owner of said note and mortgage, and upon that question is *res judicata,* and that said indebtedness was the estate of said Cyrus at the time of his death.

They also aver the allowance of the claim in favor of Theodore, and that whatever interest the heirs of Cyrus K. have in said $1,600 is an interest in the residue only after payment of the debt of the estate to said Theodore, and that it is the duty of complainant to pay said mortgage debt to said administrator; and defendants Harriet and Elizabeth deny that they set up any claim to said debt, and insist that such money is payable to the administrator, and not to the heirs, of said Cyrus K.

The defendants Byron H. Fox and Estella Brown answered

separately, and admit the facts charged in the bill of complaint, and claim that they are entitled, as two of the heirs at law of Cyrus K. Francis, to the same share of the avails of said note that their deceased mother would have been entitled to if living.

The cause was heard in the court below upon proofs taken in open court, and a decree was rendered therein on the sixteenth day of January, A. D. 1886, that the said sum of $1,600 now belongs to the persons who were the children and grandchildren of Cyrus K. Francis at the date of the mortgage, or their legal representatives in case of the death of any, and that complainant, by assignment from Charlemagne Francis, stands in his place and stead, and succeeds to his share of said sum of $1,600 and interest; that complainant be allowed to redeem by paying into the hands of the register of the court, on or before three months, the said sum of $1,600 and interest, and that thereupon said mortgage be discharged.

The decree also declares who were the heirs at law to whom such money should be paid, and that one-fifth thereof be paid to each, namely, the complainant, Theodore Francis, Harriet Bell, and Elizabeth Barrett, and one-tenth thereof to Byron H. Fox and Estella Brown each, and that complainant's costs should be paid out of the fund of $1,600 before distribution thereof under the decree.

It was further decreed that Theodore Francis, as administrator of the estate of Cyrus K. Francis, deceased, had no interest whatever in said mortgage debt. From this decree Theodore Francis, on the tenth day of February, 1886, filed his claim of appeal, and executed the proper bond.

On the twenty-fifth day of February, 1886, Theodore Francis, by his solicitors, gave notice that he had appealed as administrator, and personally, and that the appeal bond was filed on the tenth of February. This notice appears to have been filed with the register. It is printed in the record.

The case was not settled until the fifth of April, 1886; and, where proofs are taken in open court, the party has forty days from the settlement of the case in which to appeal, provided forty or more days have elapsed since the entry of the decree.   *Gale v. Gould*, 40 Mich. 62.[1]

The notice given and filed as above stated may be considered as a written claim of appeal, and made in time, of Theodore Francis as administrator; but he, as such administrator, took no steps to perfect such appeal.   The decree entered below disposed of his rights as administrator, and established certain rights in him to the fund as heir of Cyrus K. Francis.

The law is explicit that the party appealing shall file with the register, within said forty days, a bond to the appellee, with certain prescribed conditions.   The bond filed on the tenth of February, 1886, was the individual bond of Theodore Francis, and it recited that Theodore Francis had appealed to the Supreme Court from the decree of the circuit court of Kalamazoo county, in chancery, made on the eighteenth of January, in which Charles M. Love is complainant, and Theodore Francis, Harriet Bell, Elizabeth Barrett, Byron H. Fox, and Estella Brown are defendants.

The bond does not purport to cover the right of the administrator to appeal.   At that time he had not claimed an appeal.   If the bond had been given in his own behalf, and that of himself as administrator, it would have been sufficient (*Warner v. Whittaker*, 5 Mich. 241);   but such was not the case, and no appeal has been perfected in the case of the administrator of the estate of Cyrus K. Francis, deceased.

It is not to be regretted, however, as our investigation into the merits of the whole controversy leads us to the conclusion that the decree below is correct and should be affirmed.

Cyrus K. Francis, in his life-time, being the owner of

---

[1]See How. Stat. § 6738; and for important changes in law providing for hearings in open court, see Act 267, Laws of 1887, p. 358.

49 acres of land, wished to reserve to himself the income arising therefrom during his life, and to give the avails thereof to his heirs. One object was to prevent the distribution thereof through the ordinary channel of the probate court, and to make distribution thereof by his own hand during his life. To accomplish this object he converted the land into personalty, by conveying the same to Charlemagne Francis, and taking from him a promissory note for $1,600, payable to the heirs of Cyrus four years after the decease of himself. Interest at 7 per cent. per annum was to be paid to Cyrus, but was to cease upon his death.

The payment of the principal and interest according to the note was secured by a mortgage upon the property sold, which Cyrus placed of record.

The only question is whether the disposition thus made of the $1,600 constituted a valid gift *inter vivos* to the heirs. That such was the intention there can be no doubt from the transaction itself.

To constitute a valid gift *inter vivos* there must be a delivery of the thing given, either actual or constructive. It is not necessary that it be delivered to the person intended directly. It may be delivered to some person for him, or to a trustee for that purpose, and in all cases such a disposition of it must be made in favor of the donee as effectuates the object and places the *jus disponendi* beyond the power of the donor to recall. Under some circumstances the donor himself may constitute himself trustee of the thing for the benefit of the donee. *Ellis v. Secor*, 31 Mich. 185; *Green v. Langdon*, 28 Id. 221.

Such was the case here. The donor retained an interest in the avails of the fund given, by way of the interest payable thereon during his life. This interest of the donor made it necessary, in the form he saw fit to adopt to carry out his purpose, to retain the actual possession of the note for his own security, but the same instrument evidenced the

gift to his heirs as the designated object of his bounty. He had placed the mortgage of record, and had done all he could do to make a delivery consistent with his own rights in the paper, and was, by the transaction, a trustee for the heirs in the custody of the instrument by implication of law.

It requires less positive and unequivocal testimony to establish the delivery of a gift from a father to his children than it does between persons who are not related, and in cases where there is no suggestion of fraud or undue influence very slight evidence will suffice. In this case there were several donees. A manual delivery could not be made of the instrument to all, but a constructive delivery was effected by making them the payees of the note, and recording the mortgage by which it was secured. By directing the note to be made payable to his heirs, he placed the title in them at once, and it was unimportant in whose possession or custody the paper might remain. Whoever might hold such possession would do so in trust for them, and they alone could enforce payment.

In *Wyble v. McPheters*, 52 Ind. 393, where A. delivered several United States bonds to B., with directions for the latter to give the same to certain of his children at his death, B. received them, and agreed to execute the trust. It was held that this was a sufficient delivery to constitute a gift *inter vivos*, and that, upon the death of A., an action would lie against B. in favor of the children of A. to compel him to execute the trust, and also against the administrator of A., to whom B. had delivered the bonds.

Where H. had loaned to his adopted son large sums of money, and taken his notes, which he afterwards indorsed to his adopted son, but retained possession until the civil war, when he delivered them, with other notes, to the son to conceal, which he did in the house of the holder, where they remained until after the death of H., it was held that the notes were an irrevocable gift to the adopted son. *Trowell v. Carraway*, 10 Heisk. (Tenn.) 104.

In *Richardson v. Lowry*, 67 Mo. 411, it was held that a note taken by the husband on a sale of his property, payable to his wife, was *prima facie* evidence of a gift to her.

In *Malone's Estate*, 13 Phila. (Penn ) 313, it was held any act on the part of the owner of a chose in action, showing not only a present intention to transfer, but that he regarded himself as having carried his intention into effect, is sufficient without written evidence of the transaction, and that there is no difference between gifts *causa mortis* and gifts *inter vivos*.    See, also, as bearing upon the question, *Barker v. Frye*, 75 Me. 29; *Fletcher v. Fletcher*, 55 Vt. 325; *Eastman v. Woronoco Savings Bank*, 136 Mass. 208; *Scott v. Berkshire Co. Savings Bank*, 140 Id. 157; *Basket v. Hassell*, 107 U. S. 602.

Under these circumstances there was a constructive delivery of the note and mortgage, and all the delivery that could have been made in the nature of the case.    The disposition he had made of the $1,600 was effectual to place the amount beyond his control or power of recall, and passed at once to the donees intended.    The payees named in the note, namely, "the heirs of Cyrus K. Francis," must be understood as his "legal heirs" in the popular sense of that term.    He referred, by that expression, to a class of persons then in being, who bore that relation to him which would constitute them legal heirs at his death should it occur at that time.    These, under our statute, are the children living at the time of the death of the ancestor, and issue of any deceased child.

In this cause it is stipulated that on the twenty-eighth day of April, 1866, the following persons were the children and grandchildren:    The children's names were Charlemagne, Theodore, Elizabeth, and Harriet, and the grandchildren were Estella Brown and Byron H. Fox, daughter and son of a deceased daughter; and that these were his only children and grandchildren at the time of his death.

The acceptance of a gift need not be made immediately.

It is sufficient that it be accepted before revoked by death or otherwise. The fact that Charlemagne sold and assigned his interest in the sum payable to the heirs to the complainant seven years or more before the death of said Cyrus is evidence of acceptance, and, the gift being to him jointly with the other heirs, such acceptance, being beneficial, inures to their benefit.

It is set up in the joint and several answer of Theodore, Elizabeth, and Harriet that Cyrus K. Francis was indebted to defendant Theodore, at the time of the death of Cyrus, in the sum of $1,745.72, and that such sum has been allowed to him by commissioners on claims appointed by the probate court. The answer is silent as to when such indebtedness accrued, and no claim is made or urged by defendants that the gift made by Cyrus K. Francis was in fraud of his creditors or of the defendants.

It is also claimed by these defendants that the note, and indebtedness it represented, and mortgage securing the same, having passed into a decree in the foreclosure suit which adjudged Cyrus K. Francis the owner, that question is *res judicata*, and said mortgage indebtedness, so decreed, was his when he died. We do not think that the decree in that case was *res judicata*. The object of the bill was to foreclose for non-payment of interest. Cyrus K. could not foreclose for non-payment of the principal. It was not due, and never would become due, in his life-time. The proper parties to litigate the ownership of the principal sum were not before the court, and Charlemagne, by his silence or inaction, could not admit away their rights. Besides, the decree was for payment, and was fully performed, and no rights can be predicated upon it.

Charlemagne put in no answer to the foreclosure bill setting up or suggesting that the principal sum secured by the mortgage was a gift *inter vivos* to the heirs, and the complainant did not set up in his bill that there was any

63 MICH.—13.

pretense of such claim made by the defendant or other persons, and denying the truth of such claim. The case, therefore, lacked both identity of subject-matter and identity of parties to make it *res judicata* of the present case.

The subject-matter of a litigation is the right which one party claims as against the other, and on which he demands the judgment of the court. The subject-matter or right claimed by Cyrus K. Francis in the foreclosure suit against Charlemagne Francis was the annual interest due and owing to Cyrus K., and the right to enforce the mortgage security to satisfy the sum due, and to become due, to Cyrus K. for interest on the mortgage. That question is not involved in this suit. What was said by Cyrus K. Francis in his bill and testimony as to his ownership of the principal of the note, and his intention in making the disposition of his property six years previously, were not admissible to affect the rights of the donees. *Scott v. Berkshire Co. Savings Bank,* 140 Mass. 166.

If the gift took effect at all, it took effect when the papers were executed and the mortgage was recorded. Charlemagne was one of the donees, and his acceptance of the gift is implied in his undertaking to pay the principal to the heirs, a fifth thereof being payable to himself.

It is claimed that the complainant is not in a position to file a bill of interpleader. The primary object of the bill is to redeem from the mortgage, and, as connected therewith, to ascertain to whom the money is payable; and, by payment, to obtain a discharge of the mortgage. To this end the bill partakes of the character of an interpleader, and was properly filed.

The relief granted by the court below is consistent with the views above expressed, and the decree appealed from will be affirmed, with costs.

MORSE, J., concurred.

CAMPBELL, C. J. I concur with my Brother CHAMPLIN

in the disposition of this case. But, in my opinion, it was competent for the decedent to make the residuary money payable in any manner and to any persons he might choose by the terms of the contract, and it in no way concerned the party contracted with for what reasons the provisions were made, so long as the contract was based on a valid consideration between the parties. Under such circumstances a payment to the beneficiaries was the only one that would satisfy the contract, unless it was changed by the contracting parties, and this was not done. The beneficiaries had a right to proceed in equity as the real parties in interest; and the administrator, if he sued at law to enforce the contract, could only do it for failure to pay the beneficiaries, and not for the estate's benefit.

SHERWOOD, J., did not sit.