## O'NEIL *v.* GREENWOOD.

### WARNER *v.* SAME.

1. Trusts—How Created—Donor as Trustee.

The creation of a trust does not depend upon the use of a particular form of words, but it may be inferred from the facts and circumstances of the case. In order to create a trust in the donor, however, there must be an act, or series of acts, sufficient to divest him of the equitable ownership, and vest such ownership in the donee.

2. Same—Execution of Conveyance—Declaration of Trust.

It would seem to be the rule in this State that the execution of an instrument which, if delivered, would operate as a transfer of the title to property, with intent to effectuate such purpose, operates as a declaration of trust, although the possession of such instrument be retained by the grantor. But, however this may be, it cannot be said that the existence of such an instrument is *inconsistent* with an intention to create a trust in the grantor, as evidenced by other acts, where it appears that it was not intended to operate as a conveyance of the legal title until after full performance of the trust.

3. Same—Life Use by Donor.

A donor may become a trustee for the donee, though retaining a life use of the trust fund.

4. Same—Acceptance by Donee.

Where a gift, otherwise complete, is beneficial to the donee, an acceptance will be implied.

5. SAME.

The owner of certain notes and certificates of deposit inclosed the same in separate envelopes, together with bills of sale thereof to his child and grandchild, and indorsed upon the envelopes the names of the respective assignees. At the time of the transaction he stated that he should, during his life, collect the interest accruing on the obligations, but that the principal sum, upon his death, was to be the property of the persons named, and that the papers should then be delivered to them. He retained the instruments during his lifetime, collecting the interest thereon, in accordance with the intention so expressed; but he frequently declared that he held the notes and certificates in trust for such persons, and at his death the papers so set apart, or obligations of equal value, were found to be intact. *Held,* that a trust was created in the parties named, which was enforceable in equity.

6. WITNESSES — COMPETENCY — MATTERS WITHIN KNOWLEDGE OF DECEDENT.

In a suit prosecuted by the assigns of a deceased person against the personal representatives of his estate, an heir at law of the decedent, although not a party to the record, is disqualified by 3 How. Stat. § 7545, from testifying to matters which, if true, must have been equally within the knowledge of the deceased.

Appeals from Ionia; Moore, J., presiding. Submitted June 13, 1895. Decided October 1, 1895.

Separate bills by Lavalette O'Neil and Nancy Calista Warner against Levi M. Greenwood, administrator of the estate of Lewis Willey, deceased, and others, to enforce a trust. From a decree for the complainant in each case, defendants appeal. Affirmed.

*Vernon H. Smith (W. W. Mitchel,* of counsel), for complainants:

No particular form of words is necessary to create a trust. It may be inferred from the facts and circumstances surrounding the transaction. If such a purpose is shown on the part of the donor, that is sufficient. Perry, Trusts, § 112; *Ellis* v. *Secor,* 31 Mich. 185; *Cummings* v. *Corey,* 58 Mich. 502; *Chadwick* v. *Chadwick,* 59 Mich. 92; *Martin* v. *Funk,* 75 N. Y. 141; *Gerrish* v. *Savings Institution,* 128 Mass. 161; *Loring* v. *Palmer,* 118 U. S. 321.

An acceptance by the beneficiary is presumed. *Higman* v. *Stewart*, 38 Mich. 513; *Bostwick* v. *Mahaffy*, 48 Mich. 342; *Dunlap* v. *Dunlap*, 94 Mich. 11; *DeLevillain* v. *Evans*, 39 Cal. 120; *Moses* v. *Murgatroyd*, 7 Am. Dec. 484 (note). A trust may be created in personalty by parol. *Calder* v. *Moran*, 49 Mich. 14; *Hooper* v. *Holmes*, 11 N. J. Eq. 122. And trusts in personal property may exist when the property is constantly changing; *i. e.*, the specific property may change, but the fund remains subject to the trust. *Leland* v. *Collver*, 34 Mich. 423.

In the case at bar a valid trust was created, although the donor was to have the interest on the fund during his life, and although possession of the bills of sale was retained by him. *Ellis* v. *Secor*, 31 Mich. 185, and cases cited; *Leland* v. *Collver*, 34 Mich. 418; *Harris* v. *Hopkins*, 43 Mich. 272; *Chadwick* v. *Chadwick*, 59 Mich. 87; *Edinger* v. *Heiser*, 62 Mich. 611; *Love* v. *Francis*, 63 Mich. 181, 195; *Beardslee* v. *Reeves*, 76 Mich. 661; *Bunn* v. *Winthrop*, 1 Johns. Ch. 329; *Martin* v. *Funk*, 75 N. Y. 134; *Stone* v. *Hackett*, 12 Gray, 227, 231; *Davis* v. *Ney*, 125 Mass. 590; *Gerrish* v. *Savings Institution*, 128 Mass. 159, 161; *Scott* v. *Savings Bank*, 140 Mass. 157; *Tillinghast* v. *Wheaton*, 8 R. I. 536; *Williamson* v. *Yager*, 91 Ky. 282; *Egerton* v. *Carr*, 94 N. C. 648.

*A. A. Ellis (Charles P. Locke*, of counsel), for defendants:

Neither the bills of sale nor the negotiable instruments having been delivered, the gift was imperfect (2 Kent, Com. 438-9; *Duncombe* v. *Richards*, 46 Mich. 166; *Love* v. *Francis*, 63 Mich. 190; *Supervisors* v. *Auditor General*, 68 Mich. 665; *Wilson* v. *Carpenter*, 17 Wis. 512; *Dougherty* v. *Moore*, 71 Md. 248; *Sessions* v. *Moseley*, 4 Cush. 92; *Cummings* v. *Bramhall*, 120 Mass. 552; *Nutt* v. *Morse*, 142 Mass. 1; *Allen* v. *Polereczky*, 31 Me. 338; *Hanson* v. *Millett*, 55 Me. 184; *Augusta Savings Bank* v. *Fogg*, 82 Me. 538; *Craig* v. *Kittredge*, 46 N. H. 57; *Curry* v. *Powers*, 70 N. Y. 212; *Young* v. *Young*, 80 N. Y. 422; *Bunn* v. *Markham*, 7 Taunt. 224; *Smith* v. *Dorsey*, 38 Ind. 451; *Mims* v. *Ross*, 42 Ga. 121; *Bond* v. *Bunting*, 78 Pa. St. 210; *Basket* v. *Hassell*, 107 U. S. 602); and such a transfer, inoperative for want of delivery, will not be sustained as a declaration of trust (*Curry* v. *Powers*, 70 N. Y. 212; *Young* v. *Young*, 80 N. Y. 423; *Beaver* v. *Beaver*, 117 N. Y. 428; *Wadd* v. *Hazel-*

ton, 137 N. Y. 215; Flanders v. Blandy, 45 Ohio St. 108; Cummings v. Bramhall, 120 Mass. 552). The cases of Richardson v. Richardson, L. R. 3 Eq. 686, and Morgan v. Malleson, L. R. 10 Eq. 475, relied upon by complainants' counsel as sustaining a contrary doctrine, and cited in the opinion in Ellis v. Secor, 31 Mich. 191, have been distinctly overruled. Milroy v. Lord, 4 DeGex, F. & J. 264; Warriner v. Rogers, L. R. 16 Eq. 340; Richards v. Delbridge, L. R. 18 Eq. 11; Heartley v. Nicholson, L. R. 19 Eq. 244.

McGRATH, C. J. Lewis Willey, grandfather of Lavalette O'Neil and the father of Calista Warner, died suddenly, May 11, 1893, aged 77 years. He had, in 1891, been troubled with la grippe. In the early part of January, 1892, he had called in a physician, and in the course of that illness he was informed that he was liable to sudden death. Prior to January 29, 1892, he had conveyed to his children all of his real estate. He had three grandchildren,—Vernon and Fay Willey, sons of Lewis Bradley Willey, and Lavalette O'Neil. He had conveyed a farm, estimated to be worth in the neighborhood of $4,000, to Vernon and Fay Willey. Webber & Ruel were his bankers. On the date last named, Willey called in Mr. Sherwood (who had at other times prepared papers for him) and Mr. Ruel, and in their presence opened a tin box which had been kept in the vault at the bank, and exhibited several certificates of deposit issued by Webber & Ruel, amounting in the aggregate to over $2,500, and a number of promissory notes aggregating upwards of $2,500. He then stated that he had made provision for his sons and daughters, except one daughter, Calista Warner, and had provided for the Willey grandsons, but had made no provision for Lavalette O'Neil, and desired to equalize the distribution of his property by giving to Calista Warner certificates of deposit, amounting to $1,800, and to Lavalette O'Neil notes amounting to $2,200. He then selected out $1,800 in certificates of deposit, and $2,200 in notes. A bill of sale was prepared by Sherwood, transferring to Lavalette O'Neil the notes so

selected out, describing specifically said notes, which Willey executed. The notes and bill of sale were then placed in an envelope; Lavalette O'Neil's name was written thereon by Sherwood, at Willey's direction; and the envelope was placed in the tin box. The same course was pursued as to the certificates of deposit. A bill of sale to Calista Warner was prepared, executed, and, with the certificates, placed in an envelope, on which was written her name; and the envelope, with contents, was then placed in the tin box. Willey explained to both Sherwood and Ruel that he should, during his life, collect the accruing interest upon the notes and certificates, but that the principal, upon his death, was to be the property of the parties named, and in case of his death at any time the packages were to be delivered as addressed. At the same time, Sherwood prepared, and Willey executed, the discharge of a mortgage which Willey held against another intended beneficiary.

Willey afterwards deposited the tin box in the bank vault. It contained other notes, certificates, and papers. Willey retained the key, and from time to time, until his death, took papers from it, and returned the same, or others, to it. He collected the interest on the notes as the same became due. At the time of his death there had been no material changes as to the notes, but, although the amount in certificates of deposit was $2,900, all were dated after January 29, 1892. Willey had talked freely, up to the time of his death, of this transaction, to Sherwood, to Mr. Warner (the husband of Calista Warner), and to others. He had taken Warner to the bank, explained to him the transaction, exhibited to him the papers, and Warner had listed the papers. On that occasion he said to Warner, referring to the notes transferred to Lavalette O'Neil: "I want you to know that these are Lavalette's. I only hold them in trust for him." On another occasion, Willey, on learning that a piece of land adjoining Warner's farm was for sale, went to the bank, and procured a draft on Detroit for $1,800, and

went to Warner's residence, and suggested the purchase of the land. The owner asked more than Warner thought the land was worth, and the purchase was not made. Warner afterwards, at a forced sale of the premises, bid up to $1,800; but a higher bid was obtained, and he did not purchase. On another occasion, Willey, while at Warner's, suggested that certain improvements be made "with some of that money of yours which I have down there," but Mrs. Warner said that they contemplated buying another place. When Willey procured the draft, he said to his bankers that he might not use the draft, and not to destroy the certificates. When the draft was returned, it was destroyed, and no change was made in the certificates. Three days before his death, Willey exhibited to Sherwood a memorandum book in which he had listed the notes and certificates as they then stood. To Sherwood and to others Willey had, up to the time of his death, said that he was keeping the amounts so set aside intact; that he had set aside $1,800 for Calista Warner, and $2,200 for Lavalette O'Neil, and was keeping the certificates and notes for them; that he held the notes in trust for Lavalette O'Neil; that he had given Calista $1,800. To Warner he had said: "You tell Calista that I think she had better put her money in that land; that it will be a good investment." Again he said to Warner, "If I should drop off suddenly, Calista's money is there in the bank, and the banker understands it."

In the list of notes set aside to O'Neil were two notes made by Lewis Bradley Willey,—one of $725, and one of $350,—held by the father. After the father's death, Lewis Bradley Willey took from the dead man's pockets his watch, his keys, and a bundle of papers. After the funeral the heirs were called in. Mr. Ruel produced the tin box from the bank. Lewis Bradley Willey produced the key. The box was opened, but the bills of sale, certificates of deposit, and notes in question were missing. Lewis Bradley Willey then produced the certificates of

106 MICH.—37

deposit and the notes, with the exception of the note for $725 made by himself. The two bills of sale were not produced. The pocket memorandum book which deceased carried, which, a few days before his death, he had exhibited to Mr. Sherwood, and which contained a list of the notes and certificates held for O'Neil and Mrs. Warner, was also missing. Lewis Bradley Willey was not sworn. On the Sunday before his death, Mr. Willey referred to the matter of the provision made for Lavalette O'Neil and Mrs. Warner, and stated that it was in black and white, tapping the breast pocket of his coat as he made the remark. He had evidently taken the two packages from the tin box at the bank, and had them on his person at the time of his death. It may have been done for the purpose of making the very memorandum book list to which the witness Sherwood refers.

Lewis Bradley Willey was interested in the destruction of the note, the bills of sale, and the memorandum book; and, from the statements made by him respecting the matter, it is evident that these missing papers were destroyed by him after his father's death. The case must therefore be considered as if the packages had been found, after the death of Lewis Willey, with the bills of sale and the amount of the notes intact.

This record leaves no room for doubt but that Lewis Willey, on the date named, intended to separate and set apart, and did separate and set apart, from his other property, the said notes and certificates, as the property of Lavalette O'Neil and Calista Warner; that at that time he intended to and did retain possession of said property, and appropriate to himself the income thereof; that he manifested his intention to one of his bankers and to Mr. Sherwood; that he, in effect, stated to those gentlemen that the beneficial interest in the principal sum represented by the notes and bank certificates was in Lavalette O'Neil and Calista Warner; that he should retain the bills of sale and property until his death, and that at

that time the bills of sale, notes, and certificates should be delivered to the beneficiaries, and that until that time he should collect and appropriate to his own use the interest, but should preserve intact the sums so set apart; that during the time that transpired before his death he repeatedly acknowledged the relation assumed, regarded himself as holder in trust for the parties named, and, as such, under obligations to account, sedulously observed the terms of the trust, and, at his death, left both funds intact, as evidence of its execution.

It is insisted that the gift was incomplete, and that the existence of the bill of sale is inconsistent with an intention to create a trust. The creation of a trust does not depend upon the use of a particular form of words, but it may be inferred from the facts and circumstances of the case. *Crissman* v. *Crissman*, 23 Mich. 217; *Ellis* v. *Secor*, 31 Mich. 185; *Miller* v. *Aldrich*, Id. 408; *Leland* v. *Collver*, 34 Mich. 418; *Huxley* v. *Rice*, 40 Mich. 73; *Cummings* v. *Corey*, 58 Mich. 494; *Chadwick* v. *Chadwick*, 59 Mich. 87; *Beaver* v. *Beaver*, 117 N. Y. 421, 428. In the last case cited it is said, "To constitute a trust, there must be either an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created." The character of the transaction is to be determined, not alone from the bills of sale, but from all the facts and circumstances connected with the transaction. A bill of sale is not essential, as a declaration of trust is sufficient, of itself, to transfer the equitable title. Nor is its existence inconsistent with the intention to create a trust, where it appears to have been intended to operate as a conveyance of the legal title after full performance of the trust. A holding in trust involves possession, control, dominion, reinvestment, and the legal title. In order to create a trust in the donor, a mere intention or promise to give *in futuro* is insufficient. There must be an act, or series of acts, which divest the donor of the equitable ownership, and vest such ownership in the donee. Under the rule laid

down in *Ellis* v. *Secor, supra*, the execution of an instrument which, if delivered, would operate as a transfer of the title, with intent to effectuate such purpose, operates as a declaration of trust, although the possession of such instrument be retained by the grantor. There are authorities, however, which hold that an assignment intended as a gift *in præsenti*, but incomplete for want of delivery, cannot be construed as a declaration of trust. Those cases will be found, upon examination, to be instances of mere naked assignment, without other *indicia* of an intent to create a trust. *Young* v. *Young*, 80 N. Y. 422, is a case of that class. Indorsements had been made upon envelopes containing bonds, and the donor had exhibited the packages, with the indorsements thereon, to the wives of the intended donees, with the statement that he believed he had made a valid disposition of the bonds. The court held that the case was one of imperfect gift, and that the transaction could not be sustained as a declaration of trust. It is said in that case that the donor could not at the same time be both trustee and *cestui que trust*. This court has held otherwise in *Edinger* v. *Heiser*, 62 Mich. 598, and *Love* v. *Francis*, 63 Mich. 181. The New York case contains a very elaborate discussion of the main question, criticising the authorities cited with approval by the court in *Ellis* v. *Secor, supra*.

It is not necessary, however, to rest the present cases upon the fact of the execution of the bills of sale. Here we have other evidences of a manifest intention to create a trust: The parol declaration of such a purpose; subsequent conduct and statements confirmatory of such purpose; and, at the close of the donor's life, the two funds still separated from other like property, and intact. In *Milroy* v. *Lord*, 4 De Gex, F. & J. 264, Lord Chief Justice Turner said:

"I take the law of this court to be well settled that, in order to render a voluntary settlement valid and effectual, the settlor must have done everything which, according to the nature of the property comprised in the

settlement, was necessary to be done in order to transfer the property and render the settlement binding upon him.    He may, of course, do this by actually transferring the property to the persons for whom he intends to provide, and the provision will then be effectual; and it will be equally effectual if he transfers the property to a trustee for the purposes of the settlement, or declares that he himself holds it in trust for those purposes; and, if the property be personal, the trust may, as I apprehend, be declared either in writing or by parol."

In *Richards* v. *Delbridge*, L. R. 18 Eq. 11, 15, the court say:

"The true distinction appears to me to be plain and beyond dispute.    For a man to make himself a trustee, there must be an expression of intention to become a trustee, whereas words of present gift show an intention to give over property to another, and not retain it in the donor's own hands for any purpose, fiduciary or otherwise."

The present cases come clearly within this rule.    It was not necessary that decedent should have made a formal declaration of trust.    Its equivalent is all that was necessary.    Decedent, however, in conversation with one of the witnesses, gave his own interpretation of what he had done, when he stated that he held the property in trust.

A full discussion of the English cases will be found in *Ellis* v. *Secor*, where a voluntary assignment of a chose in action is held to be a sufficient declaration of trust, if the grantor meant to pass the property, and, further, that the retained possession by the grantor of a voluntary deed of gift or settlement is not inconsistent with its enforcement, if intended to be effectual, and if capable of transferring title by its terms.    In *Johnson* v. *Smith*, 1 Ves. Sr. 314, there cited, possession of a deed of gift of chattel interests and securities was retained by the donor, and was not intended to operate a beneficial interest in the grantee until the death of the grantor.    See, also, *Bunn* v. *Winthrop*, 1 Johns. Ch. 329; *Martin* v. *Funk*, 75

N. Y. 134. Acceptance by the donee was not necessary. That may be implied when the gift, otherwise complete, is beneficial to the donee. *Higman* v. *Stewart*, 38 Mich. 513; *Beaver* v. *Beaver*, 117 N. Y. 421; *Martin* v. *Funk*, *supra*.

In the Warner case the court ruled as follows:

"I understand that it is agreed here that Orville Willey and the other Willey (Bradley Willey) are children and heirs at law of Lewis Willey, deceased; and it is proposed to show by them statements that were made by their father, and facts and circumstances that came within his knowledge, as well as their own, to show what disposition was made of this identical property. The court holds that that, under the statute, would be clearly incompetent, and declines to receive it. This ruling is to be taken as though the evidence was taken, and it came up on a motion to strike the same from this case."

The ruling was correct. *Howard* v. *Patrick*, 38 Mich. 795; *Ripley* v. *Seligman*, 88 Mich. 188; *Penny* v. *Croul*, 87 Mich. 15.

The decree in each case is affirmed, with costs in each to complainant.

The other Justices concurred.