BANGS *v.* BROWNE.

1. EXECUTORS AND ADMINISTRATORS — ACCOUNTING — REOPENING ESTATE—FRAUD—EVIDENCE—SUFFICIENCY.

On a bill against executors and a bank to reopen an estate and for an accounting, evidence examined, and *held*, that there is an entire failure to establish the claim that a gift by decedent of money in the bank to his stepdaughter, shortly before he died, was a collusively corrupt attempt to rob the decedent, to which the bank, through its officers, was a party.

2. SAME—APPEAL— QUESTIONS CONSIDERED — TESTIMONY ADMISSIBLE.

Where there is an entire failure to prove that a transaction with a deceased person was a fraud upon him, as claimed, it is not necessary to determine the admissibility of testimony explaining the transaction offered by defendants and objected to as being matter equally within the knowledge of deceased.

3. GIFTS—VALIDITY—ACCEPTANCE—PRESUMPTION.

Acceptance will be presumed in support of the validity of a gift of money in bank, though the donee did not know of it until after the donor died, where the donor wrote a check which was taken to the bank and deposited to the donee's credit, and the amount thereof entered in a pass book kept in the bank, with other customers' books, subject to call by her.

Appeal from Kalamazoo; Adams, J.   Submitted June

13, 1907.    (Docket No.  35.)    Decided September 20, 1907.

Bill by Vital E. Bangs and others against Ella Browne, and Robert J. Williamson and J. Davidson Burns, executors of the last will and testament of Henry Brees, deceased, and the Kalamazoo Savings Bank, to reopen an estate, and for an accounting. From a decree dismissing the bill, complainants appeal. Affirmed.

*N. H. Stewart (S. M. Meek and C. C. March,* of counsel), for complainant.

*Dallas Boudeman, Alfred J. Mills,* and *Thomas W. Browne,* for defendants.

HOOKER, J. The wife of Henry Brees was twice a widow, before she married him, which she did in 1848. At that time she had four children, whose father was named Bangs, he being her first husband, and one named Soledad La Vegas, a daughter of her second husband. All came to Kalamazoo, and were brought up in the family of Brees. Their mother died many years ago, after which time Soledad Drake, formerly LaVegas (a widow), and her two daughters, Ella and Jennie, took up their abode with him, and managed his household affairs until he died April 30, 1897. He was then 88 years old.

Brees was a man of some wealth, his estate having inventoried $180,000. Robert J. Williamson and J. Davidson Burns, his associates in business, settled his estate as executors, under a will made by him some three years before his death, in which several, if not all, of the complainants now claim to be residuary legatees, either in their own right or through representation. The evidence indicates that they were disappointed in the amount of the estate, and that some of them, especially Mrs. Taylor, a daughter, and one Cooney, a son-in-law of Mrs. Taylor, claimed and did not hesitate to charge the executors with having covered up and diverted a large amount from the

estate. Some seven years after the death of Brees, and some time after the estate was closed and the executors discharged, the bill in this case was filed. The defendants are Ella Browne (formerly Drake), the two executors as such, the Kalamazoo Savings Bank, and Soledad Drake, and it charges in substance, among other things, that the executors and the bank colluded with Ella Browne and her mother to filch $80,000 from the estate and put it in the possession of Ella Browne, which sum or a part of it was alleged to have been used in partially erecting a valuable building. It prayed: *First.* That the order settling the final account and discharging the executors be set aside, the estate reopened, and kept open until the final order of the court in this cause. *Second.* That defendants be required to produce books and papers. *Third.* That they come to a fair accounting for the said $80,000 and interest, and that the same and any other property formerly belonging to Henry Brees be restored to the estate. *Fourth.* A preliminary injunction to protect the estate. Upon the hearing the bill was dismissed as to Soledad Drake, and later it was dismissed as to all of the defendants, and the complainants have appealed.

The case really involves but one transaction, viz., the bona fides of an alleged gift of $80,000 to Ella Browne a few weeks before the death of Henry Brees. Two questions of law are raised, one crucial, and the other of more or less importance, depending upon the view taken of the testimony. The first is whether this alleged gift necessarily failed for want of acceptance by Ella Browne before Henry Brees died; the other how far, if at all, testimony given by the several defendants was inadmissible under the statute.

The books produced upon the hearing show that on March 2, 1897, Henry Brees had two accounts in the defendant bank, one a savings account, amounting with interest to $80,993.73, the other a commercial account of some thousands. This appeared from the bank pass books

held by Brees and from the books of the bank, which agreed with them.

On March 2, 1897, a check to Ella Drake, admittedly written by Williamson, and purporting to be signed by Brees, was paid by the balancing of the savings account of Brees; $80,000 being transferred to an account then opened by the bank with Ella Drake, and $993.04 transferred to the commercial account of Brees and entered upon his commercial bank book. This item of $80,000 was not accounted for nor mentioned in the inventory of the Brees estate. Brees died about two months after the transaction mentioned and apparently the executors treated the deposit as no longer his; and in this they were clearly justified unless, as counsel for complainant claim, this was a collusively corrupt attempt to rob Mr. Brees, to which the bank through its officers was a party.

The complainants' proof consists largely of interviews between Mr. Cooney and his counsel, Mr. Meek, of Illinois, and Mr. Williamson, from which counsel ask us to find evidences of fraud and wrongdoing on the latter's part, and to infer collusion in the transaction referred to; but we are not thus impressed. On the contrary, we believe the statements of Mr. Williamson because they seem much more reasonable and probable. This leaves very little of complainants' case. There is nothing so unnatural in the preference shown Ella Browne by Henry Brees in the division of his estate as to shock any one, unless it be the disappointed stepbrothers and sisters and Mr. Cooney. Soledad Drake and her daughters had lived with him long and he had provided bountifully for them in life. Why should he not feel concern for them after he should be gone? Apparently there was warm affection toward Soledad and her children on his part. An unfortunate son of Soledad was hopelessly insane and would need to be provided for, and there is evidence that his relations with Ella were close and friendly. We find nothing showing such a relation to the older children and

their descendants that makes this preference unreasonable. He was under no obligation to leave them anything. Had he not left a will they would have had no interest in this estate, as they are not the heirs of Henry Brees. It is as residuary legatees that they make this contest.

We have so far said nothing of the testimony of the defense relating to the transaction at the residence of Henry Brees, where he is said to have directed the drawing and signed the check, with directions as to its disposition, because we feel fully warranted in saying from the other evidence that the complainants have signally failed to prove a charge of wholesale fraud, corruption, and crime on the part of people apparently respectable. It is but fair to say that there is evidence in the case which, if admissible and believed, wholly refutes this charge. We do not discuss it or rest the case upon it, and it is therefore unnecessary to decide what portions of the testimony of Ella Browne, Mr. Williamson, and others, if any, is within the statute which excludes the testimony of parties to matters equally within the knowledge of deceased.

It only remains to refer to the question of law relating to the nonacceptance of the gift. The evidence shows that Ella Browne did not know that Mr. Brees made this check at the time he is said to have made it. It was taken by the bank, placed to her credit, and her pass book kept in the bank with other customers' books subject to call by her, but it is claimed she was not informed of the circumstances until after the death of Mr. Brees. It is claimed that this fact shows that she did not accept the gift, and is fatal to it. Acceptance may be presumed in this case, even if we reject the testimony of Ella Browne as to the talk with Mr. Brees about it the night before he died. *Green* v. *Langdon*, 28 Mich. 221; *Ellis* v. *Secor*, 31 Mich. 185; *Bostwick* v. *Mahaffy*, 48 Mich. 345; *In re Dunlap's Estate*, 94 Mich. 11; *O'Neil* v. *Greenwood*, 106 Mich. 572; *Holmes* v. *McDonald*, 119 Mich. 566; *Lewis* v. *Curnutt*, 130 Iowa, 437, and cases cited.

In this case there was a plain delivery of a check, presented at the bank, paid by transfer of the fund to the payee, Ella Drake, and evidence thereof kept in the bank subject to her call.    There is not the slightest evidence that Mr. Brees had any control of the fund or the book at any time.    The decree is affirmed, with costs.

McALVAY, C. J., and CARPENTER, GRANT, and MOORE, JJ., concurred.