HAMILTON v. HALL'S ESTATE.

111    291
e134    333
111    291
136    222
111    291
141    375

TRUSTS—EVIDENCE.

> Evidence that one to whom her deceased husband had left
> all his property, with a request that she give his sister $1,000
> therefrom, paid such sister from time to time certain moneys
> as interest, and that she also expressed an intention of paying
> the principal amount when it should be convenient to do so,
> is insufficient to establish a declaration of trust as to such
> sum.

Error to Wayne; Hosmer, J. Submitted October 9, 1896. Decided December 24, 1896.

Sarah M. Hamilton presented a claim against the estate of Selina J. Hall, deceased, for a sum of money alleged to have been held by deceased in trust for claimant. The claim was disallowed by the commissioners, and claimant appealed to the circuit court. From a judgment for defendant on verdict directed by the court, claimant brings error. Affirmed.

*Bowen, Douglas & Whiting*, for appellant.

*Conely & Taylor*, for appellee.

LONG, C. J. The claimant presented to the commissioners on claims in the Wayne probate court a claim against the estate of the deceased for the sum of $1,000, and interest thereon at the rate of 7 per cent. per annum from May 13, 1890, less certain credits. This claim was disallowed by the commissioners, and an appeal was taken to the circuit court for Wayne county, where the court directed verdict in favor of the estate.

It appears that Reuben H. Hall died testate in the city of Detroit, May 13, 1890, leaving all his property to his wife, Selina J. Hall, against whose estate the claim in

controversy is presented. He had no children. Before
his death he told his wife to give to his sister, the claim-
ant here, the sum of $1,000. It is contended by the
claimant that, after the death of Reuben H. Hall, his
widow said she would follow her husband's wishes, and
give the claimant $1,000 out of the estate; that thereafter
Selina J. Hall treated the $1,000 as belonging to the
claimant; and that thereby a trust was created in favor
of claimant, which can now be enforced against said
estate. In order to determine that question, it is neces-
sary that some of the testimony given upon the trial be
set forth. Mr. Houston testified that Selina J. Hall, in
her lifetime, said to him that her husband told her, before
his death, to give his sister, Mrs. Hamilton, $1,000 out of
his estate. Witness stated that he had loaned money
for Mrs. Hall, and collected interest on it when due; that
deceased had considerable property, acquiring the greater
portion of it from her husband; that at certain times she
told him to pay claimant money as interest on $1,000;
that she said she would pay interest on the money while
she kept it, and that, at different times, she directed him
to pay claimant money for her; that in August, 1890, he
paid claimant, for deceased, $50; in February, 1891, $25;
September, 1891, $50; June, 1892, $25; August, 1892,
$20; May, 1893, $50; July 21, 1893, $25; July, 1894, $10;
July, 1894, $40; and December, 1894, $25; that he made
these payments out of interest moneys that he had
collected upon loans made for the deceased, and that
the payments were made with the knowledge of the
deceased and by her instructions. The witness was asked
to state whether Mrs. Hall ever said anything in regard
to why she did not give the whole $1,000 to claimant
immediately, and stated:

"She said she wanted Mrs. Hamilton to have this
money for her own benefit. She thought her husband
owed on his farm, and, if she gave her the $1,000, he
would turn the money in in payment of his farm."

Counsel then put in evidence a letter addressed to Mrs.

Hamilton from Mrs. Hall, under date of December 16, 1894, as follows:

"*Dear Sister:* Please explain so I can send my dues 1st January, whatever they are. I send you check for $25, and I hope it will reach you in good season and all right. Would have sent it before, but was so busy for several days before auntie went away I didn't do anything only what I had to. Wish you would send me a statement of what you have had, so I can see if it tallies with mine."

Mary Brining was called as a witness, and stated that deceased told her she was to pay Mrs. Hamilton $1,000; that she didn't have the money then, but would pay her just as soon as she could make arrangements and get it. Witness said:

" I think she was paying interest, and that she said she would pay her that money just as soon as she could get around to it."

Mabel Loomis also testified as follows:

" She said Mr. Hall told her to give Mrs. Hamilton $1,000, and that she would give it to her as soon as she could, and would give her the interest on it until she did give it to her. She said that was Mr. Hall's wish."

John W. O'Keefe testified:

" Well, she said there was no particular time that she was obliged to give it to her, only she was going to give it to her just as she saw fit,—saw that she could; that Mrs. Hamilton wanted her to give it to her all at once, but she would not do that, but she wanted to give it to her in small payments along, so that Mrs. Hamilton would use it for her own personal use. * * * She said she was going to pay her interest on it."

Mary R. West testified about a talk she had with Mrs. Hall, in which she stated:

" He wanted her to give Mrs. Hamilton a certain sum of money. She did not say to me how much. She says: 'I am going to give Sade $1,000, but I am not going to give it to her right away, because Mr. Hall didn't want

me to cramp myself; but I shall pay her interest until I get around to pay it to her.'"

The witness further testified to certain goods that were bought by Mrs. Hall and sent to Mrs. Hamilton, and said that Mrs. Hall said to her:

"This is to be applied on interest."

The witness, speaking of another occasion when she had a conversation with the deceased, said that Mrs. Hall told her that she had $1,000 coming to her, and she believed, when she got it, she would give Sade $500 of it for her next birthday. The witness, continuing, says:

"And she says: 'What do you think about it?' I says: 'Well, if you have got it to pay, I would get it off my hands, and be done with it. You are paying the interest on it now. Why not have it through with?' She says: 'I believe I will, and, when he pays me the 1st of May, I will give her $500 of it.' But she died before then. That was in January before she died."

This is substantially all of the testimony relating to the subject of the fund.

The only question relating to this branch of the case is whether the claim can be sustained as a declaration of trust. It is claimed by defendant that there was no consideration for the alleged declaration of trust; that, if made, it was purely voluntary; and that, under the facts shown, if a trust exists, it is merely executory. It is contended upon the part of the claimant that the evidence in the case is clear and explicit that Selina J. Hall, in her lifetime, declared herself voluntarily, by parol, to be trustee for the sum of $1,000 received by her from her husband for the use and benefit of claimant, and that she treated this sum as belonging to the claimant, and paid interest upon it as claimant's money, and that by so doing she passed the title to it to claimant, retaining in herself only the legal title and the right to control the fund as trustee during her lifetime for the use and benefit of claimant; that is, that

the trust was an executed one, and is not purely executory.

The distinction between executed and executory trusts is clearly pointed out in *Gaylord* v. *City of Lafayette*, 115 Ind. 423, 429, where it is said:

"A trust may be said to be executed when it has been perfectly and explicitly declared in a writing, duly signed, in which the terms and conditions upon which the legal title to the trust estate has been conveyed or is held, and the final intention of the creator of the trust in respect thereto, appear with such certainty that nothing remains to be done except that the trustee, without any further act or appointment from the settlor, carry into effect the intention of the donor as declared. In such a case, even though there was no valuable consideration upon which the trust was originally declared, a court of chancery will enforce it in favor of one whose relation to the donor was such as to show a good or meritorious consideration. Where, however, property has been conveyed upon a trust the precise nature of which is imperfectly declared, or where the donor reserves the right to define or appoint the trust estate more particularly, although it may be apparent that the creator of the trust has, in a general way, manifested his purpose ultimately, at a time and in a manner thereafter to be determined, either by himself or by the trustee, to bestow the property upon a person named, the trust is incomplete and executory, and not within the jurisdiction of a court of chancery; the rule being that courts of equity will not aid a volunteer to carry into effect an imperfect gift or an executory trust."

It is not contended by counsel for the estate that in this case a written declaration of the trust was necessary, the fund being personal property. Such a trust may be created by parol. *Crissman* v. *Crissman*, 23 Mich. 217; *Bostwick* v. *Mahaffy*, 48 Mich. 342. But it is contended that, in order to establish a parol trust, the evidence must be very clear and satisfactory, and find some support in the surrounding circumstances and in the subsequent conduct of the parties. This rule is sustained in *Crissman* v. *Crissman, supra*, as well as in *Allen* v. *Withrow*, 110 U. S. 119; *Bailey* v. *Irwin*, 72 Ala. 505; 1 Perry, Trusts, §§ 77, 86. To create a trust,

where the donor retains the property, the acts or words relied upon must be unequivocal. *Young* v. *Young*, 80 N. Y. 422 (36 Am. Rep. 634); 27 Am. & Eng. Enc. Law, p. 56, and cases there cited. And this rule applies with peculiar force where it is claimed that the donor constituted himself trustee. *Williamson* v. *Yager*, 91 Ky. 282. In *Beaver* v. *Beaver*, 117 N. Y. 421, 428 (15 Am. St. Rep. 531), which was cited with approval by this court in *O'Neil* v. *Greenwood*, 106 Mich. 572, it was held that, "to constitute a trust, there must be either an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created." The mere declaration of an intention or purpose to create a trust, which is not carried out, is of no value, and a mere agreement or statement of an intent to make a gift in the future is not sufficient. It must be such that, from the time it is made, the beneficiary has an enforceable equitable interest in the property, contingent upon nothing except the terms imposed by the declaration of the trust itself.

The rule in relation to the creation of trusts is well stated in *Ray* v. *Simmons*, 11 R. I. 266 (23 Am. Rep. 447), as follows:

"A person need use no particular form of words to create a trust or to make himself a trustee. It is enough if, having the property, he conveys it to another in trust, or (the property being personal) if he unequivocally declares, either orally or in writing, that he holds it *in præsenti* in trust or as a trustee for another."

Many cases are cited in support of this proposition.

The general rule is laid down in 1 Perry, Trusts, § 86, as follows:

"When a person *sui juris*, orally or in writing, explicitly or impliedly declares that he holds personal property *in præsenti* for another, he thereby constitutes himself an express trustee."

From an examination of the testimony in this case, it is evident that no trust was ever created, and the most

that can be said of it is that it was the intent of Mrs. Hall, at some future time, to give to Mrs. Hamilton the sum of $1,000. But counsel contend that the payment of interest, and the promise to pay interest in the future, evidence the setting apart of the fund as the money of Mrs. Hamilton. We think not. Mr. O'Keefe testified, upon that point, that Mrs. Hall said that there was no particular time she was obliged to give it to Mrs. Hamilton, only she was going to give it to her as she saw fit,— saw that she could; that Mrs. Hamilton wanted her to give it to her all at once, but she would not do that; that she wanted to give it to her in small amounts along, so that Mrs. Hamilton would use it for her own personal use. It appears, therefore, very plain that there was no fund set apart, and the payments made, whether of principal or interest, were only to help Mrs. Hamilton as her needs demanded. It is evident that there was an intent on the part of Mrs. Hall to make a gift at some indefinite time in the future, but she set apart no fund for that purpose. It is very different from the case of *O'Neil* v. *Greenwood*, 106 Mich. 572. There Mr. Willey intended to set apart, and did set apart, the notes and certificates as the property of Lavalette O'Neil and Calista Warner, though he retained possession of them and appropriated the income. At his death he left the fund intact as evidence of the execution of the trust. The testimony here falls far short of establishing an executed trust, one which can be enforced. Under this evidence we think it could hardly be contended that Mrs. Hamilton could have enforced the agreement against Mrs. Hall during her lifetime, and the court was not in error in holding that no trust was ever created, and very properly directed verdict and judgment in favor of defendant.

That judgment must be affirmed.

The other Justices concurred.