*In re* SMITH.

MOORE *v.* SMITH.

1. APPEAL AND ERROR—MANDAMUS — INTERLOCUTORY ORDERS — REVIEW.

An order setting aside another whereby the court granted a new trial is not subject to review on error; the appropriate remedy is mandamus.

2. WILLS—REVOCATION—CHANGE OF SITUATION.

A conveyance by a testator of all his property after executing his will revokes it.

3. SAME—DELIVERY—CHOSE IN ACTION.

As a general rule choses in action may be transferred without a manual delivery.

4. SAME—TRUSTS.

In order to render a voluntary settlement valid, the settlor must have done everything which, according to the nature of the property comprised in the settlement, was necessary to be done in order to transfer the property and render the settlement binding upon him; to accomplish this purpose he may actually transfer the property to the persons for whom he intends to provide, or he may transfer it to

a trustee or declare that he holds it in trust for purposes
stated.

5. SAME—DELIVERY—EXECUTOR—REVOCATION.

It is not sufficient to create a voluntary trust that the
donor write and sign a declaration. By delivering such
trust instrument to the son of testatrix, who was a bene-
ficiary, some time after executing a will, the question of
her intention to complete a present disposition of the
property thereby effecting a revocation became one of fact.

Error to Kalamazoo; Weimer, J. Submitted April
17, 1916. (Docket No. 43.) Decided June 1, 1916.
Rehearing denied December 22, 1916.

Edwin Moore and others presented for probate the
last will of Huldah M. Armstrong, deceased. From
an order admitting the same to probate, Laura Smith
appealed to the circuit court. Judgment for contest-
ant. Proponents bring error. Reversed.

*Alfred S. Frost,* for appellants.

*Charles L. Dibble,* for appellee.

OSTRANDER, J. Upon appeal from an order admit-
ting to probate the last will of Huldah M. Armstrong,
deceased, both parties asked for a directed verdict,
which was refused, and the court submitted to the jury
two special questions, which were:

Was the instrument purporting to be the last will
and testament of Huldah M. Armstrong procured by
undue influence?

Did Huldah M. Armstrong, after the execution of
the will involved in this case, execute and deliver a
valid declaration of trust, covering all the property,
real and personal, which she then had?

The first question the jury answered in the negative,
and the other affirmatively, and returned a general
verdict for contestant. A motion to set aside the ver-
dict was made and was brought on for hearing before
Hon. Frank E. Knappen, then judge of the circuit

court for the county of Kalamazoo. It was not, however, submitted for decision before Judge Knappen died. Judge Stewart, who succeeded Judge Knappen, made an order, setting aside the verdict and granting a new trial. Thereafter the cause was, for a year or more, regularly on the calendar for trial, but was not reached. Judge Weimer succeeded Judge Stewart, and in January, 1915, made an order setting aside Judge Stewart's order and a judgment was entered for contestant. This judgment proponents seek to have set aside.

There was introduced upon the trial a written instrument, with proof of its execution and its delivery without directions to Albert Armstrong, a son of testatrix. The trust created by the instrument was never accepted by the nominated trustee. It is to be inferred that he declined to act unless all heirs of the testatrix would sign an approval of the trust instrument, which some of them did not do. The instrument was not received or held by him; he did nothing in execution of the trust, and never had possession of or exercised control over the property described in the instrument, which was all of the property of the testatrix. On the contrary, the testatrix herself possessed and controlled the property until she died. There is testimony tending to prove that testatrix unwillingly executed the trust agreement; that she was told, or it was stated in her presence, that its execution would not interfere with the disposition she had made of her property by will, and that the reason for executing the instrument was to pacify a son who was making, or threatening to make, it uncomfortable for his mother and brothers and sisters. There is also testimony tending to prove that more than one declaration of trust was prepared; that there were conferences of interested parties, or their representatives, concerning the terms of such a declaration; that the one in evi-

dence here was supposed to be satisfactory to the settlor and her children and grandchild; and that the purpose of some at least of those beneficially interested was to place the property beyond the control of, and to prevent further changes of disposition by, the settlor. Some of the testimony challenges the intelligent making of the trust declaration by the settlor, but her competency is not challenged, in argument, in this court. The trust instrument follows:

"This indenture, made this tenth day of August, in the year of our Lord, one thousand nine hundred eleven, between Huldah M. Armstrong, of Pavilion township, in Kalamazoo county, State of Michigan, party of the first part, and William B. Milham, of Portage township, in said county and State, party of the second part: Witnesseth, that whereas, first party has heretofore made a partial distribution among her children, and a granddaughter, the child and sole heir of her deceased son, Charles Moore, at the same time turning over to her son, Albert J. Armstrong, with whom she had made her home for many years, all of her household furniture; and whereas, the said Albert J. Armstrong purchased from said first party, her farm premises situated in said Pavilion township, in the purchase of which it was agreed that he had been advanced his entire share of the property and estate which first party might leave at the time of her death, and, whereas, the said first party desires to provide by this declaration of trust for her future support and maintenance, and the distribution of any estate remaining at her death:

"Now, therefore, in consideration of the premises, and the sum of one dollar, to her in hand paid by said second party, the receipt whereof is hereby confessed and acknowledged, the said first party hereby grants, bargains and sells unto the said party of the second part, and to his successors and assigns, all of the following personal property, to wit: Seven hundred eighty-seven and 10/100 dollars, on deposit to the credit of first party in the Kalamazoo City Savings Bank, and the following securities which are in safety deposit box at the said bank, to wit: Promissory note

for three hundred eighty dollars, bearing date April 22, 1911, made by said Albert J. Armstrong to first party, drawing interest at six per cent.; a certain promissory note for thirteen hundred dollars, bearing date April 22, 1911, made by said Albert J. Armstrong to first party, drawing six per cent. interest; promissory note for forty-four and 65/100 dollars, bearing date March 29, 1908, made by Clarence Staffen to William Sullivan, drawing interest at the rate of six per cent. per annum; and a certain promissory note, secured by real estate mortgage, for three hundred dollars, bearing date March 29, 1908, made by George Tassell, and drawing interest at the rate of seven per cent. per annum, also including all interest in wheat belonging to first party.

"To have and to hold, the same unto the said second party his successors and assigns, upon the trusts nevertheless, and to and for the uses, interests and purposes hereinafter limited and declared; that is to say, upon the trust to take immediate possession and control of all said personal property and funds, and to receive and collect all interest, and as well to make collection, from time to time of said notes, and to sue on the same, if necessary, with full power to invest and reinvest, in his discretion, the funds of said trust, and to apply and pay out said trust fund as follows: To pay in due season all lawful debts, incurred in the board, care, clothing, medical attendance and any and all other lawful expenses incurred by first party, it being expressly understood that at the date hereof I am owing none of my children anything whatever on account of board, clothing or otherwise, and neither do I owe anything outside on any account whatever. The intention of this instrument is not to limit said expenditures to the income from said trust funds merely, but if the income is not sufficient to comfortably support and maintain said first party, said second party shall in his discretion, use of the principal thereof, so much as shall be necessary to comfortably support and maintain said first party so long as she shall live and upon her death to pay all expenses incident to her last illness, death and burial, and if there shall remain in his hands, after the payment of all the foregoing expenses, any of said trust funds, to distribute

and pay over said balance of trust funds, after first deducting therefrom a reasonable sum to compensate the said second party for services by him rendered as trustee hereunder, unto the following named persons, to wit: Edwin J. Moore, Ernest W. Moore, Helen Tolsma, Genevieve Haas (children of the first party), and Laura Smith (sole heir of Charles Moore, a deceased son of first party), the undivided one-fifth to each, share and share alike, and to their respective heirs and assigns, forever.

"In witness whereof, the said party of the first part has hereunto set her hand and seal, the day and year first above written.

"HULDAH M. ARMSTRONG. [Seal]"

The execution of the instrument is not formally witnessed, and not at all except by the appended or added indorsements of some of the heirs approving the declaration and urging the nominated trustee to accept the trust. Contestant states her position as follows:

"The will of which proponents seek probate was revoked by implication and operation of law 'from subsequent changes in the condition or circumstances of the testator.' Such change in the condition of the testator was brought about by the execution of the declaration of trust conveying all her property."

Upon this point, the court instructed the jury as follows:

"I charge you, as a matter of law, that if you find that Mrs. Armstrong did in fact execute and deliver such a declaration of trust, it would revoke the will in this case if you find that will to be a valid will. If she did it intentionally and intelligently, and was mentally competent to plan and form and sign such an instrument, it would revoke the will in this case, if you find that will to be a valid will. There is evidence in this case that Huldah M. Armstrong, after she had signed the declaration of trust—that she handed it to Albert Armstrong, who was one of the beneficiaries named in the declaration, and that she did not, in so doing, give him any instructions or attach any conditions as to what he was to do with the paper. This

would make a valid, sufficient, and unconditional delivery. If you believe that Mrs. Armstrong signed the declaration of trust, there is a presumption that she signed it willingly and with knowledge of what it contained, but this presumption may be rebutted by evidence that it was not her free act, or intelligent act, bearing in mind at the same time that the contestant has the burden of proof to show that it was done freely, willingly, and intelligently. That act of itself revoked the will by implication if you find that it was done intelligently and was her free act and wish, and that by that act she intended to revoke her former will. If under the rule just stated she did execute the declaration of trust, that act, together with the delivery which took place at the same time, revoked the will if there were a will. What third persons may have told her of what they may have thought as to the legal effect of the execution of the declaration of trust is entirely immaterial on this point. The act itself revoked the will by implication.  *  *  *  The only questions for you to determine in regard to this declaration of trust are whether Mrs. Armstrong did in fact sign such declaration of trust voluntarily and with full knowledge of what it contained, and with the intention that it should go into effect at once; if she did, then it went into effect, and thereby the will was revoked by implication."

The jury was further advised:

"The law on that branch of the case is this: That where one after making a will disposing of all of their property mentioned in the will, by a conveyance, for illustration intends to make a new or different disposition of the property, it would be a revocation of the former will though valid."

In the brief for appellants, argument is addressed: *First*, to the question of the right of the court to set aside the order granting a new trial. This question is not properly before us, the order complained about being interlocutory and reviewable, if at all, in mandamus proceedings. But the court had jurisdiction to make the order (*Manufacturers' Mutual Fire Ins. Co.*

v. *Circuit Judge,* 79 Mich. 241 [44 N. W. 604]), and we cannot, except upon some review of the very questions raised by the assignments of error, say that judicial discretion was abused. The jury having disposed of the only objection made to the validity of the will, the question presented is whether revocation of the will is properly established.

A conveyance by a testator of all of his property after making his will revokes the will. *In re Sprague's Estate,* 125 Mich. 357 (84 N. W. 293). In that case the trust instrument was in terms not unlike the one in the case at bar. There was, however, real estate, as well as personal property, disposed of, and the trust was accepted and the trustee proceeded to execute it. It was said by this court:

"The testatrix expressly conveyed to the trustee the absolute title in fee to all her real estate, and also the absolute title to all her personalty, merely retaining a life interest in the homestead. The intent to revoke her will and replace it by the trust deed could not be more clearly shown."

The case before us presents questions not directly involved in the one referred to. In the *Sprague Case,* the trust instrument, a deed, was executed with the formality required in the execution of a will. The instrument was delivered, and there was an acceptance of the trust by the trustee. The testatrix in her lifetime made a complete transfer of all of her property. It is urged here by contestant that if the trust instrument was delivered by the settlor, nothing more was required to be done to effect an assignment of the choses in action and money described therein. It is undoubtedly now the general rule that choses in action may be transferred by written assignment, without manual delivery of them. And the courts in some cases have gone far to effectuate a transfer of personal property when the donor has done all that can be done

to transfer it. *Ellis* v. *Secor*, 31 Mich. 185 (18 Am. Rep. 178). And to this end various trusts have been held to be complete and executed. *Bostwick* v. *Mahaffy*, 48 Mich. 342 (12 N. W. 192) ; *O'Neil* v. *Greenwood*, 106 Mich. 572 (64 N. W. 511). In the last-mentioned case this court quotes with approval from *Milroy* v. *Lord*, 4 De Gex, F. & J. 264, as follows :

"I take the law of this court to be well settled that, in order to render a voluntary settlement valid and effectual, the settlor must have done everything which, according to the nature of the property comprised in the settlement, was necessary to be done in order to transfer the property and render the settlement binding upon him. He may, of course, do this by actually transferring the property to the persons for whom he intends to provide, and the provision will then be effectual; and it will be equally effectual if he transfers the property to a trustee for the purposes of the settlement, or declares that he himself holds it in trust for those purposes; and, if the property be personal, the trust may, as I apprehend, be declared either in writing or by parol."

As, to some extent, illustrating the general rule, see, also, *Peninsular Savings Bank* v. *Wineman*, 123 Mich. 257 (81 N. W. 1091) ; *Clay* v. *Layton*, 134 Mich. 317 (96 N. W. 458) ; *Hamilton* v. *Hall's Estate*, 111 Mich. 291 (69 N. W. 484).

In the case at bar the written declaration of the settlor is explicit enough, and if the instrument had been delivered to, and the trust accepted by, the nominated trustee, continued manual possession of the fund by the settlor would not be sufficient to defeat the trust. But in such a case something besides a mere declaration, written or oral, is required to create a trust estate—to divest the owner of title to her property and vest the title in another, in trust. The theory of a trust, such as contestant relies upon, is the present passing of title from the owner to another. It cannot be sufficient to create a voluntary trust that one

merely write and sign a declaration of trust. Something more is required. Here the settlor delivered the declaration to her son, who was interested, apparently, though not directly, as a beneficiary in the trust declared, without any directions. It does not appear that she afterwards interested herself in the matter, although she must have known, if her act was an intelligent one, that the trustee she had named did not possess himself of the property, or attempt to execute the trust. In my opinion, in view of all of the circumstances disclosed, it is a question of intention, of fact, not whether she intended to revoke her will by the writing, but whether she intended, in delivering the instrument to her son, to make it effective as a present disposition of all of her property. If she did, then, in legal effect, she revoked her will.

Unfortunately for this little estate and the persons entitled to it, the court did not submit this question of fact, for which reason the judgment must be reversed, and a new trial granted, with costs to appellant.

STONE, C. J., and KUHN, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred. BIRD, J., did not sit.